**In re James Wesley ROE, Merna Nagley Roe, Debtors.**

**Bankruptcy No. 80–21196.**

United States Bankruptcy Court, D. Kansas.

Jan. 15, 1982.

See also, Bkrtcy 14 B.R. 649.

Henry W. Green, Leavenworth, Kan., for debtors.

William E. Pray, Leavenworth, Kan., for creditor, First National.

1. *Published at 14 B.R. 649.*

Joseph H. McDowell, Kansas City, Kan., trustee.

## SUPPLEMENTAL OPINION AND OR-DER CONFIRMING THE DEBTORS' SECOND AMENDED PLAN

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

On December 17, 1981, debtors' Second Amended Plan came on for confirmation. First National Bank and Trust Company of Leavenworth, Kansas, had filed an objection to confirmation. Debtors were represented by Henry W. Green. First National was represented by William E. Pray. Joseph H. McDowell, standing trustee, also appeared. The Court confirmed the plan; and filed an Order of Confirmation on January 11, 1982. In light of First National's appeal of that order, the Court files the following supplemental opinion and order.

## PROCEDURAL HISTORY

This case has a lengthy and somewhat confused procedural history. For clarification, the following relevant events have transpired to date:

1. The debtors filed their original Chapter 13 petition and plan on November 12, 1980.

2. First National filed an objection to confirmation of that plan on January 16, 1981. It alleged that the Plan did not comply with Code sections 1325(a)(1), 1322(b)(1), 1325(a)(3), 1325(a)(4) and 1325(a)(6).

3. The objection to confirmation came on for hearing on March 16, 1981, at which time the court took the matter under advisement.

4. On August 17, 1981, an evidentiary hearing was held to assist the Court's determination of the value of the debtors' nonexempt assets.

5. On September 30, 1981, the Court issued its Journal Entry of Judgment and Memorandum Opinion.[1] The Court denied confirmation because the Plan was not fea-

sible as required by section 1325(a)(6). The Court found that the Plan did comply with Code sections 1325(a)(1), 1322(b)(1), 1325(a)(3) and 1325(a)(4).

6. On October 9, 1981, debtors filed a Motion for rehearing and a proposed modification of the plan (i.e. first amended plan). They alleged that the amended plan was feasible due to increased income.

7. On October 13, 1981, First National filed an objection to the amended plan, on the same grounds as before.

8. On November 12, 1981, debtors filed an amended proposed modified plan (i.e. second amended plan). They alleged that income increases and proceeds from the sale of one of their businesses rendered the plan feasible. First National objected on the same grounds as before.

9. On December 17, 1981, the second amended plan came on for confirmation. The court held that all Code sections were complied with; and the Court confirmed the second amended plan. First National appeals that decision.

## FINDINGS OF FACT

After due consideration of the evidence, pleadings, statements of counsel and the file herein, the Court finds as follows:

1. That the Court has jurisdiction over the parties and the subject matter.

2. That the debtors do business as Deli's, Inc. At the time the petition was filed (November 12, 1980), they owned two delicatessens. In October of 1981, they sold, as authorized by the Court, the Fourth Street Deli for $11,000.00. They continue to operate the Delaware Street Deli. Out of the $11,000.00 proceeds, they paid $7,219.21 to Manufacturer's State Bank, to retire a loan secured by the Fourth Street Deli assets. Sale expenses totalled $660.00. Thus, out of the $11,000.00, the debtors realized $3,120.79. They turned the $3,120.79 over to the trustee.

3. That First National is the sole unsecured creditor. Its claim of $23,137.57

arises out of a judgment in Leavenworth County District Court Case No. 79C834.

4. That the terms of the debtors' second amended plan are as follows:

a. Payments of $325.00 per month to the trustee;

b. First National is to receive whatever amount the court determines it would receive in a Chapter 7 liquidation proceeding;

c. Secured creditors are to be paid in full and prior to First National. The secured claims included in the plan are: Manufacturer's State Bank—$2,800.33; Manufacturer's State Bank—$2,154.05; Leavenworth Teacher's Credit Union—$3,965.00; [2]

d. Secured creditors outside of the plan are: Manufacturer's State Bank—$4,956.48 (car note that debtors personally guaranteed for Deli's, Inc.); and Leavenworth Mutual Savings and Loan—$31,823.96 (home mortgage).

e. Payout time is undetermined, pending the Court's determination of the amount First National is to receive through the plan.

5. That the trustee has received the $3,120.79 in sale proceeds and about $1,500.00 in plan payments. Thus, the trustee has on hand about $4,620.79.

6. That the debtors' non-exempt assets are: a boat and trailer; Duckwall and Shoprite stock; a 1981 Mazda; the assets of Deli's, Inc.; and the $3,120.79 in sale proceeds.

7. That the debtors' income has increased since the time of the original plan. *Originally,* their net monthly *income* was *$1,939.14* ($999.24 from her salary; $907.-24 from his income from the operation of Deli's, Inc. and $32.66 in dividends). Their net monthly *income* is *now $2,258.67* ($1,124.82 from her salary; $100.00 that is no longer payroll deducted from her salary for a Leavenworth Teacher's Credit Union loan; $986.48 from his income from the operation of Deli's, Inc.; $32.66 in divi-

**2.** *Secured claims as of the date of the filing of* the petition.

dends; and $14.71 in additional income realized from tax cuts).

8. That the debtors' expenses have decreased since the time of the original plan. *Originally* their monthly *expenses* were *$1,781.66.* Their monthly *expenses* are *now $1,656.66* (they now contribute $125.00 to their daughter's educational expenses, whereas they previously contributed $250.00).

## CONCLUSIONS OF LAW

First National objects to confirmation of the second amended plan on grounds that it does not comply with sections: 1325(a)(1); 1322(b)(1); 1325(a)(3); 1325(a)(4); and 1325(a)(6), of Title 11, United States Code.

▇ This Court finds that the original plan complied with sections 1325(a)(1) and 1322(b)(1). Those sections cumulatively require that the plan not unfairly discriminate against any unsecured class. The Court was not persuaded by First National's contention that it was discriminated against because it was the only creditor whose claim was compromised, in that First National is the only unsecured creditor; and the Code allows the compromise of unsecured claims. All required under the Code is that the unsecured creditors are entitled to not less than what they would receive if the case was liquidated under Chapter 7 (§ 1325(a)(4)). The same circumstances exist now as at the time of the original plan; First National is the sole unsecured creditor. Thus, this Court finds that the second amended plan complies with sections 1325(a)(1) and 1322(b)(1).

This Court found in its Memorandum Opinion of September 30, 1981, that the original plan was proposed in good faith, as required by § 1325(a)(3). The Court used a subjective test, examining all of the circumstances and the debtors' financial condition. See *In re Bixby,* 10 B.R. 456, 4 C.B.C.2d 485 (Bkrtcy.D.Kan.1981). Since the debtors' financial condition and proposed plan payment differ in the second amended plan, the Court must again determine the good faith issue.

▇ The debtors propose to pay $325.00 per month, substantially more than the $150.00 monthly payment in the original plan. After their plan payment and their reasonably estimated monthly expenses are deducted from their monthly income, they are left with a $277.01 budget surplus. This surplus is not unreasonably large, given that they must provide for certain exigencies. In light of these facts, the Court finds that the plan was proposed in good faith.

The debtors' second amended plan hurdles First National's § 1325(a)(4) objection, by specifying that First National is to receive not less than the amount that it would receive in a Chapter 7 liquidation. The debtors ask the Court to determine what that amount would be. Section 1325(a)(4) states:

"(a) The Court shall confirm a plan if—

\* \* \* \* \* \*

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of cash allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;"

▇ Section 1325(a)(4) is commonly called the "best interests of creditors" test. Under the Code, holders of allowed unsecured claims are not given the power to accept or reject the plan, as they were under the Act. To protect their interests, however, a condition precedent to confirmation is that the plan be in the best interests of all holders of allowed unsecured claims. The Court need not launch an independent investigation. 5 *Collier on Bankruptcy* § 1325.01(2)(D)(2) (15th ed.).

The operative time to determine the value of the distributed property, or the effective date of the plan, has been construed as:

1. At or about the time of the confirmation hearing. See *In re Keckler,* 3 B.R. 155, 1 C.B.C.2d 574, 6 B.C.D. 14 (Bkrtcy.N.D.Ohio 1980); or

2. The date the confirmation order becomes final. See 5 *Collier on Bankruptcy* § 1325.01(2)(D)(b)(i) (15th ed.); Klee, *"All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code"*, 53 Am.Bankr.L.J. 137 n.24 (1979); or

3. The date of the valuation hearing. See *In re Klein*, 10 B.R. 657, 4 C.B. C.2d 412, 7 B.C.D. 668 (Bkrtcy.E.D.N. Y.1981).

■ Since this Court held a protracted valuation and evidentiary hearing on August 17, 1981, this Court finds that the operative time to determine the value of the property to be distributed, is as of that date. This Court has previously determined that the value of certain non-exempt assets as of August 17, 1981, is as follows:

| | |
|---|---|
| Boat and trailer | $4,000.00 |
| 1981 Mazda | 4,500.00 |
| Duckwall & Shoprite stock | 9,750.00 |

This Court also determined the value of Deli's, Inc. as of August 17, 1981, but that valuation is no longer controlling, because of the sale of the Fourth Street Deli. Therefore, the value of its equipment and inventory can no longer be included in the valuation of Deli's, Inc.

■ This Court further finds that the present value of Deli's, Inc. equals the value of the inventory and equipment of the Delaware Street Deli. That value is $3,164.88 ($2,559.00 equipment and $605.88 inventory taken from appraisals offered by the debtors and admitted in a prior confirmation hearing). The Court assigns no value to the Deli's, Inc. stock held by the debtors, because there is no market for stock of such a closely held concern.

■ There is an additional non-exempt asset that did not exist at the time of the original plan, the $3,120.79 in proceeds from the sale of the Fourth Street Deli. The total value of the non-exempt assets to be distributed through the plan, then, is $24,-535.67.

This value must be offset by the secured claims against such assets that would be enforceable in a Chapter 7 proceeding.

Those claims, as of the date of the filing of the petition are:

| | |
|---|---|
| Boat and trailer | $3,965.00 |
| 1981 Mazda | 4,956.48 |
| Duckwall and Shoprite stock | 2,800.33 |
| Delaware Street Deli assets | 1,557.15 |
| | 2,154.05 |
| | $15,433.01 |

The value of the non-exempt assets must also be offset by probable allowable Chapter 7 administrative expenses. The Court finds that such expenses would probably total $1,500.00. Thus, the amount available for distribution to unsecured creditors in a Chapter 7 liquidation would be $7,602.66 ($24,535.67, less $15,433.01, less $1,500.00 = $7,602.66). Therefore, in a Chapter 7 liquidation proceeding, First National, as the sole unsecured creditor, would receive $7,602.66. ACCORDINGLY, this Court orders the debtors to pay First National $7,602.66 through the plan (32% of First National's claim).

First National's final objection to confirmation is that the plan is not feasible as required by § 1325(a)(6). This Court denied confirmation of the original plan on that ground; but changed circumstances and a materially different plan necessitate a fresh analysis of feasibility.

This Court finds that the debtors will have no problems meeting their $325.00 monthly plan obligation; and they have an adequate budget surplus to handle any emergencies that crop up. By the Court's calculations, the plan will pay out in 57 months; and the time for payment under the plan is so extended. This is derived from the following calculations:

| | |
|---|---|
| Amount paid to secured creditors outside plan | $15,433.01 |
| Amount paid to First National, unsecured creditor | 7,602.66 |
| | $23,035.67 |

| | |
|---|---|
| Amount of plan payments to trustee to date | $ 1,500.00 |
| Amount of sale proceeds to trustee | 3,120.79 |
| | $ 4,620.79 |

$23,035.67 minus $4,620.79 = $18,414.88 still to be paid under the plan.

At $325.00 per month, the Plan would pay out in 57 months. Thus, the Plan will be completed within five years, as required by section 1322(c).

The purpose of Chapter 13 has been adequately set out in 5 *Collier on Bankruptcy* (15th ed.) ¶ 1300.02, pg. 1300–20, where it is stated:

> "The legislative intent of Chapter 13 is therefore no mystery. In the words of the Committee on the Judiciary of the House of Representatives:
>
> 'This bill attempts to cure these inadequacies in the Bankruptcy Act and to prevent the frequent problems confronting consumer debtors that have occurred both in the bankruptcy court and out. First, the bill simplifies, expands, and makes more flexible wage earner plans, called plans for Individuals with Regular Income, under the bill. Second, many of the provisions in the current bankruptcy law that enable private action to undo the beneficial effects of bankruptcy are changed. Third, the debtor is given adequate exemptions and other protections to ensure that bankruptcy will provide a fresh start.... The premises of the bill with respect to consumer bankruptcy are that use of the bankruptcy law should be a last resort; that if it is used, debtors should attempt repayment under chapter 13, *Adjustment of Debts of an Individual with Regular Income*; and finally, whether the debtor uses chapter 7, *Liquidation*, or chapter 13, *Adjustment of Debts of an Individual*, bankruptcy relief should be effective, and should provide the debtor with a fresh start.'"

Therefore, the Court finds that the Plan is feasible, and meets all the requirements of § 1325(a), Title 11, United States Code. Thus, the second amended plan is confirmed.

IT IS SO ORDERED.