In re Billy H. **RAINES** and Teresa Ann Raines, Debtors.

Bankruptcy No. 382–01576.

United States District Court, M.D. Tennessee.

Aug. 2, 1983.

Steve C. Norris, Nashville, Tenn., for debtors.

  (2) any immediate or mediate transferee of such initial transferee."

Henry E. Hildebrand, III, Nashville, Tenn., Trustee.

## MEMORANDUM

MORTON, Chief Judge.

This matter is before the court on the trustee's objection to the confirmation of the debtors Billy H. and Teresa Ann Raines' Chapter 13 plan.[1] After consideration of the evidence presented at the hearing, briefs of the parties, stipulations, the debtors' proposed plan and the entire record, this court concludes that the trustee's objection is without merit and therefore the debtors' Chapter 13 plan should be confirmed.

The following shall constitute findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

The debtors filed a Chapter 13 wage earner petition with the bankruptcy court for this district on May 17, 1982. The petition states that Billy H. Raines is employed by Cem-Fil Corporation and has a net take home pay, after the deduction of $44.20 for taxes and $4.35 for insurance, of $183.61 per week whereas Mrs. Raines is currently unemployed. The debtors' employment status has apparently not changed appreciably since the filing of their Chapter 13 petition. The Raines have one child who is now more than one year old.

In their petition, the debtors estimated their future monthly expenses to be $618.00 per month, broken down as follows:

| Rent or home loan payment | | $ 260.00 |
| Utilities— | | |
| Electricity | $ 35.00 | |
| Water | –0– | |
| Heat | –0– | |
| Telephone | –0– | |
| Other | –0– | |
| | $ 35.00 | 35.00 |

| Food | | 150.00 |
| Clothing | | 20.00 |
| Laundry and cleaning | | 13.00 |
| Newspapers, periodicals and books (including school books) | | –0– |
| Doctor and medical expenses | | 5.00 |
| Transportation (not including auto payments to be paid under plan) | | 85.00 |
| Recreation, club and entertainment | | –0– |
| Insurance (not deducted from wages)— | | |
| Auto | $ 50.00 | |
| Life | –0– | |
| Other | –0– | |
| | $ 50.00 | 50.00 |
| Taxes (not deducted from wages or included in home loan payments) | | –0– |
| | | $ 618.00 |

The debtors' petition further reflects secured debt in the amount of $1,175.00 and unsecured debt in the amount of $1,931.90, for a total debt of $3,106.90. The minimal assets possessed by the debtors were valued at $2,235.00.

The Chapter 13 plan proposed by the debtors provides for the debtors' two secured creditors to receive the value of their security in deferred cash payments and for unsecured creditors to receive 100% payment over a period of 36 months. Of the debtors' total monthly income of $795.64, $618.00 would be consumed by the debtors' estimated average monthly expenses and $108.33 (approximately $25.00 per week) would be allocated toward the completion of the Chapter 13 plan. This would leave a surplus of $69.31 in the debtors' monthly budget which is not allotted either for the debtors' expenses or for payments under the plan.

The Chapter 13 trustee objected to the confirmation of this proposed plan on the grounds that it was not submitted by the debtors in good faith in accordance with 11 U.S.C. § 1325(a)(3).[2] The trustee specifical-

---

1. Pursuant to Administrative Order No. 28–4, this case was referred to Bankruptcy Judge George C. Paine, II, in his temporary capacity as standing master for this district. Upon review of the report submitted by Judge Paine, pursuant to Federal Rule of Civil Procedure 53(e), this court finds that his report should be adopted as the opinion of this court.

2. 11 U.S.C.A. § 1325(a)(3) (West 1979) provides:

"(a) The court shall confirm a plan if—

. . . . .

(3) the plan has been proposed in good faith and not by any means forbidden by law; . . ."

ly contends that, since the plan contains a monthly surplus of $69.31, it does not represent the debtors' best efforts to treat their creditors fairly and therefore is not proposed in good faith.[3] The trustee urges that this "fat in the budget" could be utilized to make greater monthly payments under the plan and thereby reduce the 36 month term for repayment proposed by the debtors.

This court cannot accept the trustee's constricted definition of the term "good faith" as used in § 1325(a)(3). Unfortunately, both the Bankruptcy Code and its legislative history are silent on the meaning of good faith. The commentators and judges in their treatises and case analyses have attempted to formulate a working definition of the term, albeit without much success. However, there is one overriding common denominator that emerges from an examination of these authorities, which is that § 1325(a)(3) requires a close examination of the totality of all circumstances surrounding the Chapter 13 case to insure that the proposed plan complies with the basic purposes of Chapter 13. *See Kitchens v. Georgia Railroad Bank & Trust Co.,* 702 F.2d 885 at 888–889 (11th Cir.1983); *United States v. Estus,* 695 F.2d 311, 316–317 (8th Cir.1982); *Deans v. O'Donnell,* 692 F.2d 968, 972 (4th Cir.1982); *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427, 431–432 (6th Cir.1982); *Barnes v. Whelan,* 689 F.2d 193, 200 (D.C.Cir.1982); *Goeb v. Heid,* 675 F.2d 1386, 1389–1390 (9th Cir.1982); *Ravenot v. Rimgale,* 669 F.2d 426, 431 (7th Cir.1982); *Finance One of Georgia, Inc. v. McKithan,* 23 B.R. 268, 270–71 (D.N.D.Ga.1982); *Georgia Railroad Bank & Trust Co. v. Kull,* 12 B.R. 654, 659–660 (D.S.D.Ga.1981); *In re Martini,* 28 B.R. 932, 934 (Bkrtcy.S.D.N.Y. 1983); *In re Sanders,* 28 B.R. 917, 921 (Bkrtcy.D.Kan.1983); *In the Matter of McGinnis,* 18 B.R. 525, 527 (Bkrtcy.N.D.Ga. 1982); *In re Henry,* 4 Bankr. 220, 223–224 (Bkrtcy.M.D.Tenn.1980). This test, which is admittedly inexact, must necessarily be applied on a case by case basis with the final determination left to the sound discretion of the bankruptcy court.

Implicit in the enunciation of this standard of review is a rejection of the trustee's absolutist interpretation that a plan, to be proposed in good faith, must represent the debtor's best efforts. The term "good faith" connotes a broader inquiry than the narrower, more confining standard of a debtor's best efforts. While the debtor's best efforts might serve as one criteria for determining whether a plan is proposed in good faith, it certainly cannot be considered a mandatory requirement.

Furthermore, in drafting § 1325(a)(3), Congress must have realized the import of using a "good faith" rather than a "best efforts" standard of review. This Congressional recognition is manifested in the language of § 727(a)(9) which allows a Chapter 7 debtor to obtain a discharge prior to the end of six years from the previous filing of a Chapter 13 petition if the debtor paid 100% of the unsecured claims or the debtor paid at least 70% of the unsecured claims, and "the plan was proposed by the debtor in good faith, and was the debtor's best effort." 11 U.S.C.A. § 727(a)(9) (West 1979). If "good faith" was synonymous with "best efforts," then Congress would have had no need to include both of these terms in § 727(a)(9).

■ For these reasons, this court joins the growing number of courts that have refused to distort the "good faith" standard into an absolute requirement that a debtor must propose a plan which represents his "best efforts." *See, e.g., Georgia Railroad Bank & Trust Co. v. Kull,* 12 B.R. at 659– 660; *In re Long,* 10 B.R. 880, 881 (D.S.D. 1981); *In the Matter of Wiggles,* 7 B.R. 373, 377–379 (Bkrtcy.N.D.Ga.1980); *In re Schongalla,* 4 B.R. 360, 362–363 (Bkrtcy.D.Md. 1980); *In re McMinn,* 4 B.R. 150, 152–153 (Bkrtcy.D.Kan.1980); *In re Armstrong,* 1 Collier Bankr.Cas.2d (M.B.) 1060, 1061 (Bankr.D.Or.1980); *General Finance Co. v.*

**3.** The trustee originally made a similar objection to two other proposed plans in Chapter 13 cases. These objections were subsequently withdrawn after these Chapter 13 debtors submitted modified plans to the court.

*Powell,* 2 B.R. 314, 315–316 (Bkrtcy.E.D.Va. 1980). *See also* 3 W. NORTON, BANKRUPTCY LAW AND PRACTICE § 77.06, at 6–11 (1982).

Turning to the particular case at hand, the court finds that the Chapter 13 plan is proposed by the debtors in good faith and is not contrary to either the spirit or purposes of Chapter 13. The fact that a $69.31 surplus is retained in the debtors' monthly budget is insufficient reason to deny confirmation *in this case.*

It should be obvious that some cushion in the debtors' plan might very well be necessary to protect the debtors from the vagaries of everyday life, including inflation and unexpected expenses. *See Security Insurance Co. v. Vratanina,* 22 B.R. 453, 456 (Bkrtcy.N.D.Ill.1982); *In re Roe,* 16 B.R. 706, 709 (Bkrtcy.D.Kan.1982); *General Finance Co. v. Powell,* 2 B.R. at 315. As Bankruptcy Judge Bonney pithily explained:

"Are the creditors entitled to every nickel of the excess of income over expenditures? I think not. 'Good faith' does not mean that every shekel must go that way."

*General Finance Co. v. Powell,* 2 B.R. at 315. Indeed, requiring all of the debtors' monthly income to go to either meet their estimated expenses or provide payment under the Chapter 13 plan could cause the plan to be unfeasible under § 1325(a)(6) and therefore unconfirmable.[4] *See In re Guerrieri,* 10 B.R. 464, 465 (Bkrtcy.D.R.I.1981).

The monthly surplus of $69.31 in this particular plan is simply not so extravagant or outlandish as to indicate bad faith on the part of the debtors, especially in consideration of the very modest figures which the debtors have allocated as their monthly expenses. For instance, the debtors project a cost of only $35.00 for all utilities, $150.00 to feed a family of three which breaks down to $50.00 per person per month, a meager $20.00 for clothing, $5.00 for doctor and medical expenses and no funds whatso-ever for taxes or recreation and entertainment. The court is incredulous that only $5.00 per month is alloted for medical expenses, when a significant portion of the debtors' prepetition debts were medical related and there is no indication in the record that the debtors presently have any type of comprehensive medical insurance. Under these provisions, the debtors' standard of living will be spartan. Indeed, if it were not for the monthly surplus of approximately $70.00 in the debtors' budget, this court would be hard pressed to find this proposed plan feasible.

As an additional factor, the court would note that the debtors' plan provides for *full* payment to unsecured creditors. The trustee nevertheless urges that the repayment of creditors can be accomplished much sooner if the $69.31 surplus is allocated for payments under the Chapter 13 plan. While this court sympathizes with the trustee's desire to obtain repayment to creditors as quickly as possible, it will not impose what are essentially draconian conditions on the debtor and his family solely in order to achieve this goal.

In overruling the trustee's objection in this case, the court does not intend to create any quantitative test for the confirmation of proposed Chapter 13 plans. Whether or not a surplus in a Chapter 13 debtor's budget may be an indicia of bad faith must be determined on a case by case basis with a consideration of all relevant circumstances.

The court will accordingly enter an order dismissing the trustee's objection and confirming the debtors' proposed Chapter 13 plan.

IT IS, THEREFORE, SO ORDERED.

---

4. 11 U.S.C.A. § 1325(a)(6) provides:
"(a) The court shall confirm a plan if—

(6) the debtor will be able to make all payments under the plan and to comply with the plan."