# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 06-6025EM

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Keith N. Griffin, Sr., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | Appeal from the United States |
| Kimberly E. Banks, et al, | * | Bankruptcy Court for the |
| | * | Eastern District of Missouri |
| Plaintiffs - Appellees, | * | |
| | * | |
| v. | * | |
| | * | |
| Keith E. Griffin, Sr., | * | |
| | * | |
| Defendant-Appellant. | * | |

Submitted: July 26, 2006
Filed: September 21, 2006

Before KRESSEL, Chief Judge, MAHONEY, and VENTERS, Bankruptcy Judges.

MAHONEY, Bankruptcy Judge.

This is an appeal from a decision of the bankruptcy court which denied the debtor, Keith N. Griffin, Sr. ("Griffin"), a discharge in his Chapter 7 case under 11 U.S.C. § 727(a)(9). Griffin filed the Chapter 7 case within six years of the petition date of a Chapter 13 case in which he received a discharge. The bankruptcy court

found, on a motion for summary judgment, that Griffin did not pay at least 70% of the allowed unsecured claims in the Chapter 13 case. Interpreting 11 U.S.C. § 727(a)(9) to require such amount of payments in a Chapter 13 case filed within six years of the Chapter 7 petition date to be eligible for a Chapter 7 discharge, the court denied the discharge. The issue on appeal concerns the meaning of the statutory language used in 11 U.S.C. § 727(a)(9).

We reverse the decision of the bankruptcy court.

## STANDARD OF REVIEW

The interpretation of a statute is a question of law. Daley v. Marriott Int'l, Inc., 415 F.3d 889, 894 (8th Cir. 2005). Legal conclusions are reviewed *de novo*. DeBold v. Case, 452 F.3d 756, 761 (8th Cir. 2006). Appellate review of a grant of summary judgment is *de novo*. U.S. Bank v. Young (In re Young), 336 B.R. 775, 778 (B.A.P. 8th Cir. 2006).

## DISCUSSION

The debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on July 8, 1999. He obtained confirmation of a plan, completed payments under the plan, and received a discharge in the Chapter 13 case. Allowed priority and general unsecured claims amounted to $20,101.10 in the aggregate. Actual distribution to unsecured claimants under the plan totaled $6,780.06. Secured claimants were paid $16,669.41, plus interest of $1,885.06. Attorney fees and trustee commissions amounted to $3,449.81 and were paid in full. The Chapter 13 trustee distributed $28,784.34 to the various parties. The Chapter 7 petition was filed on June 4, 2005, less than six years after the Chapter 13 petition date.

2

The Bankruptcy Code at 11 U.S.C. § 727(a)(9) provides, in relevant part:

> The court shall grant the debtor a discharge, unless —
>
> . . . .
>
> the debtor has been granted a discharge under section 1228 or 1328 of this title . . . in a case commenced within six years before the date of the filing of the petition, unless payments under the plan in such case totaled at least —
>> (A) 100 percent of the allowed unsecured claims in such case; or
>> (B)  (i) 70 percent of such claims; and
>>       (ii) the plan was proposed by the debtor in good faith, and was the debtor's best effort.

The bankruptcy court's interpretation of the statute is consistent with every reported opinion which has commented upon or mentioned the statute. See, e.g., In re Hiatt, 312 B.R. 150, 152 n.2 (Bankr. S.D. Ohio 2004);  In re McMeekan, No. 96-82757, 1997 WL 33475211 at *4 (Bankr. C.D. Ill. Jan. 30, 1997); In re Messenger, 178 B.R. 145, 149 (Bankr. N.D. Ohio 1995); In re Karayan, 82 B.R. 541 (Bankr. C.D. Cal. 1988); In re Pierce, 82 B.R. 874 (Bankr. S.D. Ohio 1987); In re Greer, 60 B.R. 547 (Bankr. C.D. Cal. 1986); In re Raines, 33 B.R. 379, 381 (M.D. Tenn. 1983); In re Price, 20 B.R. 253 (Bankr. W.D. Ky. 1981); Triplett v. Arndt (In re Aalto), 8 B.R. 157 (Bankr. M.D. Fla. 1981); In re McClaflin, 13 B.R. 530 (Bankr. N.D. Ill. 1981); In re Poff, 7 B.R. 15 (Bankr. S.D. Ohio 1980). However, none of these courts was actually interpreting the section in a Chapter 7 case in which this issue had arisen.

When attempting to determine the meaning of a statute, one must begin with the language of the statute itself.  Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985).  If the statute's language is plain, "the sole function of the courts is to enforce it according to its terms."  Caminetti v. United States, 242 U.S. 470, 485 (1917), *quoted in* United States v. Ron Pair Enter., Inc., 489 U.S. 235, 241 (1989).  See also

Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004). Accord Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000).

The debtor suggests that each of the cases discussing § 727(a)(9), and the bankruptcy court in this case, have misread the statute. The debtor points out that the statutory language does not discuss payments to unsecured creditors. Instead, the language used is "payments under the plan." The debtor argues that the phrase "payments under the plan" includes payments for attorney fees and trustee's fees, payments on secured debts, and payments on priority claims, in addition to payments on general unsecured claims.

The debtor also points out that subdivision (A) of the exception to denial of the discharge requires that payments under the plan in the earlier case totaled "at least" 100% of the allowed unsecured claims in such case. If Congress meant the language to be interpreted as payment of all unsecured claims, there would be no reason to use the words "at least" preceding the words "100% of the allowed unsecured claims," because no debtor in a Chapter 13 case would, or could, pay more than 100% of the unsecured claims. Congress could have said – but did not – "unless payments under the plan *to unsecured creditors* totaled 100% of the allowed unsecured claims, or at least 70% of such claims . . . ."

The debtor is correct that the language of the statute does not include any reference to payments or distributions to unsecured creditors or on unsecured claims. Instead, the language used is "payments under the plan . . . totaled at least . . . 100 percent of the allowed unsecured claims in such case; or 70 percent of such claims; and the plan was proposed by the debtor in good faith, and was the debtor's best effort."

Interpretations of the language "payments under the plan" generally focus on discharge under § 1328. Some courts interpret this language to mean completion of

payments due to the trustee or all payments referred to in the plan, whether paid through the trustee or paid directly. See In re Smith, 237 B.R. 621, 626 (Bankr. E.D. Tex. 1999) (§ 1328(a) compels the issuance of a discharge upon completion by the debtor of all amounts due under the plan); In re Perez, 339 B.R. 385, 390 n.4 (Bankr. S.D. Tex. 2006) (in requiring all debtors to make mortgage payments through the Chapter 13 trustee, the court discussed the terminology regarding "payments under the plan" and stated, "[t]he term 'under the plan' properly refers to any payment made pursuant to the provisions of a Chapter 13 plan, regardless of whether such payment is made through the trustee or by a debtor directly to a creditor.").

Other courts emphasize the payments of dividends. In the case of In re Rivera, 177 B.R. 332, 335 (Bankr. C.D. Cal. 1995), although the debtors had paid to the trustee all of the required monthly payments identified in the plan, allowed claims exceeded what the debtors had scheduled so the payments to the trustee did not provide unsecured creditors with a 65% dividend, which was required in the plan. Because the creditors had not received the payout stated in the plan, the debtors had not completed their payments under the plan.

Whichever way a court looks at the language, the cases are consistent that the phrase "payments under the plan" means either payments required by the confirmed plan to be paid to the trustee for distribution as described in the plan, or, as in Rivera, payments required to be made because of a defined percentage dividend to unsecured creditors in the specific language of the plan.

No case has been found that interprets the phrase "payments under the plan" in the context of the Chapter 13 confirmation or discharge as being limited to payments on unsecured claims. It is only in the cases discussing potential issues arising in a hypothetical case under 11 U.S.C. § 727(a)(9) that the courts have suggested that the phrase "payments under the plan" means "payments on unsecured claims."

The phrase "payment under the plan" is used in several other places in the Bankruptcy Code. In the confirmation standards of 11 U.S.C. § 1325(b)(1)(B), as that provision read prior to the 2005 amendments, the phrase is used as follows:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
>> . . . .
>> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make *payments under the plan.*

11 U.S.C. § 1325(b)(1)(B) (emphasis added).

That language does not state that the disposable income needs to be applied only to unsecured claims. In contrast, the language of the same section as amended in 2005 does state that such disposable income "will be applied to make payments to unsecured creditors under the plan."[1] Congress apparently knows how to write clear language with regard to payments to unsecured creditors when it believes such language is appropriate.

Similarly, in the hardship discharge section of Chapter 13, at 11 U.S.C. § 1328(b), Congress made specific reference to payment of unsecured claims as follows:

> (b) [A]t any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if —
>> . . . .
>> (2) the value, as of the effective date of the plan, *of property actually distributed under the plan on account of each allowed*

_____

[1] 11 U.S.C. § 1325(b)(1)(B) (2006).

6

*unsecured claim* is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under Chapter 7 of this title on such date[.]

11 U.S.C. § 1328(b)(2) (emphasis added).

The plain language of this statutory section tells us that a debtor cannot obtain a hardship discharge in Chapter 13 unless the debtor made payments to unsecured creditors in an amount equal to what the unsecured creditors would have received in a Chapter 7 case. Once again, when Congress desires to refer to payments to unsecured creditors, it does so.

The Supreme Court has recently discussed the manner in which courts should interpret Congressional intent when certain language is excluded from one statutory section that is included in another provision of the same statute. "A familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." Hamdan v. Rumsfeld, ___ U.S. ___, 126 S. Ct. 2749, 2765-66 (2006). See also Russello v. United States, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972))).

The language of § 727(a)(9) is clear and plain. If a debtor in a Chapter 13 case pays to the trustee for distribution under the plan an amount equal to 70% of the allowed unsecured claims, and the court finds that the plan was proposed by the debtor in good faith and was the debtor's best effort, or if such debtor pays to the trustee for distribution under the plan an amount which totals at least 100% of the allowed

unsecured claims, the debtor, when filing a Chapter 7 case within six years of the petition date of the Chapter 13 case, will not be denied a discharge.

The trustee suggests that such an interpretation of the statutory language leads to an absurd result. It is the position of the trustee that § 727(a)(9) was placed in the Code to combat fraud and abuse of the bankruptcy system by requiring significant payments to unsecured creditors in Chapter 13 cases. The trustee's position is not supported either by the plain language of the statute or the legislative history. Section 727(a)(9) is the successor to the provisions of Section 14(c)(5) of the Bankruptcy Act of 1898, as amended.[2] Under the Bankruptcy Act, what we now refer to as a Chapter 7 liquidation was sometimes referred to as a "straight bankruptcy." A composition was a plan under a particular section of the Bankruptcy Act which permitted the creditors to agree to accept less than 100% payment of their claims. A wage earner's plan, in the form of a 100% dividend to unsecured creditors, was called an "extension." Perry v. Commerce Loan Co., 383 U.S. 392, 395 (1966). In Perry, the Supreme Court decided that a Chapter 13 extension plan was not subject to the discharge bar referred to above because the plan proposed complete payment of the unsecured claims.

When the language of a statute is not ambiguous, there is no need to inquire into legislative history. Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). However, even if one investigates the legislative history of this statutory provision,

---

[2]See Perry v. Commerce Loan Co., 383 U.S. 392, 394 n.2 (1966) (quoting 52 Stat. 850 (1938), as amended, 11 U.S.C. § 32(c)(5)):

> (c) The court shall grant the discharge (in bankruptcy) unless satisfied that the bankrupt has . . . (5) in a proceeding under this title commenced within six years prior to the date of the filing of the petition in bankruptcy . . . been granted a discharge, or had a composition or an arrangement by way of composition or wage earner's plan by way of composition confirmed under this title . . . .

8

one finds no support for the proposition that the drafters intended the final language to mean that 70% of the unsecured claims had to be paid in a prior Chapter 13 case for a Chapter 7 debtor to be eligible for a discharge.

In early versions of the bills which eventually became the 1978 Act, 11 U.S.C. § 101, et seq. (1978), the Senate bill retained the language similar to that under the Act.[3] The original House bill retained the six-year bar on discharge with respect to straight bankruptcy, but did not retain the bar with regard to confirmation of composition wage earner plans under Chapter 13. H. Comm. on the Judiciary, 95th Cong., Report on Bankruptcy Law Revision as part of H.R. 8200 (1977), reprinted in App. C Collier on Bankruptcy Pt. 4(d)(i), at App. Pt. 4-1527 (Alan N. Resnick et al. eds., 15th ed. rev. 2004).

The legislative history, as contained in the Senate floor manager's version of the joint explanatory statement concerning the compromise bill, states:

> Sections 727(a)(8) and (9) of the House amendment represent a compromise between provisions contained in section 727(a)(8) of the

---

[3]Section 727(a)(8) in the Senate version reads:

(a) The court shall grant the debtor a discharge, unless —

. . . .

(8) the debtor has been granted a discharge under this section, under section 1141 of this title, or under section 14, 371, or 476 of the Bankruptcy Act, or had a plan by way of composition confirmed under section 651 of the Bankruptcy Act or chapter 13 of this title, in a case commenced within six years before the date of the filing of the petition[.]

App. C Collier on Bankruptcy Pt. 4(e) at App. Pt. 4-1823 (Alan N. Resnick et al. eds., 15th ed. rev. 2004).

House bill and Senate amendment. Section 727(a)(8) of the House amendment adopts section 727(a)(8) of the House bill. However, section 727(a)(9) of the House amendment contains a compromise based on section 727(a)(8) of the Senate amendment with respect to the circumstances under which a plan by way of composition under chapter XIII of the Bankruptcy Act or chapter 13 of title 11 should be a bar to discharge in a subsequent proceeding under title 11. The paragraph provides that a discharge under section 660 or 661 of the Bankruptcy Act or section 1328 of title 11 in a case commenced within 6 years before the date of the filing of the petition in a subsequent case, operates as a bar to discharge unless, first, payments under the plan totaled at least 100 percent of the allowed unsecured claims in the case; or second, payments under the plan totaled at least 70 percent of the allowed unsecured claims in the case and the plan was proposed by the debtor in good faith and was the debtor's best effort.

App. D Collier on Bankruptcy Pt. 4(f)(iii) at App. Pt. 4-2565 (Alan N. Resnick et al. eds., 15th ed. rev. 2004).

From this short legislative history, it appears that the compromise involved the Senate moving from an absolute bar of a discharge in a case filed within six years of a prior case to a permitted exception to such bar. Such a result is different from what the Senate Report, issued prior to the compromise, seems to have contemplated.[4]

---

[4]See S. Rep. 95-989, at 13 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5799:

The new Chapter 13 undertakes to solve these problems insofar as bankruptcy law can provide a simple yet precise and effective system for individuals to pay debts under bankruptcy court protection and supervision. The new Chapter 13 will permit almost any individual with regular income to propose and have approved a reasonable plan for debt repayment based on that individual's exact circumstances. As in current law, 100 percent payment plans will be encouraged by the limitation on availability of a subsequent discharge i[n] section 727(a)(8). This kind

(continued...)

There is nothing in the actual language of the agreed-upon statutory provisions that became § 727(a)(9) or in the language of the floor manager, quoted above, which indicates a sense of Congress to require significant payments to *unsecured* creditors to avoid the discharge bar in a subsequent case.

Notwithstanding the quoted legislative history and the references to payment of claims in the above-cited cases, the statutory language of 11 U.S.C. § 727(a)(9) does not refer to payment of claims or payment of unsecured creditors. It refers to "payments under the plan," which, in every single Chapter 13 case, will be different from "payments to unsecured creditors."

In this case, the debtor, in the completed Chapter 13 case, paid to the trustee as "payments under the plan" far more than the total of the allowed unsecured claims. Section 727(a)(9), therefore, does not bar this debtor from receiving a discharge in his Chapter 7 case.

The order of the bankruptcy court is reversed.

―――――――――――――――――

[4](...continued)
of plan has provided great self-satisfaction and pride to those debtors who complete them and at the same time effect a maximum return to creditors. The limitation of Sec. 727(a)(8) will also provide a slight brake on the wholesale filings of Chapter 13's by small businessmen who wish to avoid some of the restrictions of Chapter 11. It is also necessary to prevent Chapter 13 plans from turning into mere offers of composition plans under which payments would equal only the non-exempt assets of the debtor.