# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 07-6025EA

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Craig Matthew Frederickson, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | Appeal from the United States |
| David D. Coop, | * | Bankruptcy Court for the |
| | * | Eastern District of Arkansas |
| Trustee - Appellant. | * | |
| | * | |
| v. | * | |
| | * | |
| Craig Matthew Frederickson, | * | |
| | * | |
| Debtor - Appellee. | * | |
| | * | |

Submitted:  August 15, 2007
Filed: September 24, 2007

Before KRESSEL, Chief Judge, FEDERMAN, and MAHONEY, Bankruptcy Judges.

MAHONEY, Bankruptcy Judge.

This appeal was filed by the Chapter 13 trustee from an order of the bankruptcy court[1] overruling the trustee's objection to confirmation of the debtor's plan of reorganization. It concerns the interpretation of the phrases "projected disposable income" and "applicable commitment period" in 11 U.S.C. § 1325(b)(1)(B) as it was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The question before us is whether, to obtain confirmation of a Chapter 13 plan, an "above-median debtor" whose disposable income is negative when calculated per the statutory requirements must propose a plan that runs five years? The bankruptcy judge confirmed a 48-month plan. For the reasons stated below, we affirm.

## I. Standard of Review

The findings of fact are uncontested and no review thereof is sought by the parties. The bankruptcy court's statutory interpretation is a conclusion of law, which is reviewed de novo. Colsen v. United States (In re Colsen), 446 F.3d 836, 839 (8th Cir. 2006); Banks v. Griffin (In re Griffin), 352 B.R. 475, (B.A.P. 8th Cir. 2006).

## II. Background and Discussion

The essence of Chapter 13 is a debtor's ability to repay, through a confirmed plan, at least some of his or her debts over time. In the pre-BAPCPA world, the "disposable income" used for plan payments was initially calculated by subtracting "reasonable" expenses reported on Schedule J from the income reported on Schedule I. If the trustee or a creditor objected, the court would determine the amount that would be allowed as "reasonable" expenses to be used in the calculation. 11 U.S.C. § 1325(b)(2) (2004). That "disposable income" was to be used to make plan payments to cover administrative, secured, priority, and general unsecured claims. The BAPCPA

---

[1]Richard D. Taylor, United States Bankruptcy Judge for the Eastern District of Arkansas.

amendments modified the definition to state that disposable income "means current monthly income received by the debtor" less reasonably necessary expenditures for the living expenses of the debtor and any dependents, and certain charitable contributions. 11 U.S.C. § 1325(b)(2). "Current monthly income" is a defined term (11 U.S.C. § 101(10A)) which Chapter 13 debtors calculate by using Official Form 22C, the Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income. It averages a debtor's income over the six months preceding the bankruptcy filing and uses national and local Internal Revenue Service allowable expense standards. The "disposable income" determined from Form 22C is to be used solely to pay unsecured claims. This method provides an extended view of the debtor's financial history. The pre- BAPCPA method provides a snapshot of the debtor's current financial situation.

The debtor in this case filed his Chapter 13 petition, schedules, Form 22C, and proposed plan on December 13, 2006. Form 22C showed that his annualized income was above the applicable median family income for the state of Arkansas, so he is what is known in modern bankruptcy parlance as an "above-median debtor." The Form 22C also showed that the debtor's monthly expenses exceed his current monthly income by $95.49, resulting in negative disposable income. Nevertheless, the debtor proposes to make plan payments of $600 per month. This incongruity arises from the different sources for and function of the figures used in the schedules and on Form 22C. In contrast to the Form 22C numbers, the schedules filed with the petition show a lower average monthly income and much lower average monthly expenses, with the result that the debtor has an actual monthly surplus of $600 with which to make plan payments.

In his plan, the debtor proposes to pay $600 per month for 48 months. Administrative costs, secured debt, arrearage on long-term debt, and priority tax claims will be paid through the plan, with a pro rata distribution of approximately 75 percent to unsecured creditors. The trustee objected to the duration of the plan,

arguing that 11 U.S.C. § 1325(b)(4) requires the term of the plan to be 60 months because this is an above-median debtor.

After a hearing, the bankruptcy court overruled the objection, finding that under the circumstances of this case – the circumstances being the negative disposable income – the Bankruptcy Code does not require the debtor to pay into the plan for five years. The bankruptcy court reasoned that the introductory clause of 11 U.S.C. § 1325(b)(4) says "for purposes of this subsection" the applicable commitment period is either three years or five years, and the "for purposes of this subsection" language can only refer to subsection (b), which addresses what a plan must contain to withstand objection to confirmation. One thing a plan must contain is a provision to apply all of the debtor's projected disposable income to payments to unsecured creditors. However, if there is no projected disposable income, then subsection (b)(4) and the applicable commitment period do not even come into play. The bankruptcy court quoted In re Alexander, 344 B.R. 742 (Bankr. E.D.N.C. 2006), saying "there is no reason to extend plans artificially if there is no requirement that debtors pay a dividend to unsecured creditors over time." In re Frederickson, 368 B.R. 825, 831 (Bankr. E.D. Ark. 2007) (quoting Alexander, 344 B.R. at 751).

On that basis, the bankruptcy court ruled that an above-median debtor who has no disposable income according to Form 22C can propose a confirmable plan with a length of less than five years if the other statutory requirements are met. 368 B.R. at 831.

The parties in the present case agree that because the disposable income calculated on Form 22C is negative, the debtor is not required to make any payments of "projected disposable income" to unsecured creditors under the plan and the court so found. However, the Trustee takes the position that the disposable income calculation provides a number that is only the minimum amount the debtor must pay to the unsecured creditors. According to the Trustee, because the debtor is "above

median," the debtor must stay in the plan for five years and pay into the plan the monthly amount shown as available from deducting "reasonable" expenses as initially shown on Schedule J, or as determined by the court, from the actual income of the debtor on the petition date or the confirmation date. The Trustee points to no statutory authority for such a suggestion, but relies on the assumption that the intent of Congress was to require debtors to pay more to unsecured creditors than was the case prior to the amendments.

To determine if this 48-month plan is confirmable, we must discuss "projected disposable income" and the "applicable commitment period," both of which are referred to in 11 U.S.C. § 1325(b)(1)(B).

Our analysis commences, as always, with the text of the statute. "The starting point in discerning congressional intent is the existing statutory text and not the predecessor statutes." Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) (citations omitted). "It is well established that 'when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" Id. (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)).

The framework for determining whether a plan may be confirmed is set out in 11 U.S.C. § 1325. If an objection to confirmation is filed, the bankruptcy court must ensure that the elements of § 1325(b)(1) are met. That section provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>     (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>     (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on

5

the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

The "applicable commitment period" for payment of projected disposable income to unsecured creditors referred to above is defined as five years for an above-median debtor. 11 U.S.C. §1325(b)(4).

The phrase "projected disposable income" is not a new term. It was in 11 U.S.C. § 1325(b)(1)(B) prior to BAPCPA and was interpreted to mean the disposable income determined by subtracting "reasonable" expenses from Schedule J, or from the determination by the court, from the actual income of the debtor and projected, or applied, over the life of the plan. 11 U.S.C. § 1325(b)(2); Anderson v. Satterlee (In re Anderson), 21 F.3d 355 (9th Cir. 1994) (adopting the Fifth Circuit's interpretation in Commercial Credit Corp. v. Killough (In re Killough), 900 F.2d 61, 64 (5th Cir. 1990): Calculation of projected disposable income is a two-step process, where the court first multiplies the debtor's monthly income by 36 and then determines how much of that is disposable.); In re Richardson, 283 B.R. 783 (Bankr. D. Kan. 2002) (following Anderson); In re Baker, 194 B.R. 881, 884 (Bankr. S.D. Cal. 1996) ("Projected income is typically calculated by multiplying a debtor's monthly income as of the time of confirmation by the number of months of the plan. The projected income is then compared to those projected monthly expenses which are 'reasonably necessary to be expended for the maintenance or support of the debtor' to determine the extent to which the projected income is 'disposable.' To the extent the projected income exceeds the reasonable projected expenses it constitutes 'projected disposable income' and must be committed to the plan." (citations omitted)); In re Mullen, 369 B.R. 25, 32 n.2 (Bankr. D. Or. 2007) ("Before the BAPCPA effective date, 'projected disposable income' usually was calculated by multiplying the difference between Schedule I income and Schedule J expenses by the estimated length of the Plan, consistent with the requirement of § 1322(a)(1) that the debtor commit 'such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan.' Neither the term 'projected

6

disposable income' in § 1325(b)(1)(B) nor the commitment of future income requirement of § 1322(a)(1) was amended by BAPCPA."). While BAPCPA modified the Code definition of "disposable income" to incorporate the new term "current monthly income" as defined elsewhere in the Code, BAPCPA did not redefine "projected disposable income."

However, the lack of a statutory definition of "projected disposable income" has led to varying interpretations as bankruptcy courts across the country struggle to ascertain what the BAPCPA amendments mean. Some courts continue to calculate projected disposable income from Schedules I and J, see, e.g., In re Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 2006), some courts calculate it either from Schedules I and J or Form 22C, whichever more accurately reflects the debtor's anticipated ability to pay creditors, see, e.g. In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006), and some follow a plain-meaning approach using only the current monthly income figure from Form 22C, see, e.g., In re Alexander, 344 B.R. 742 (Bankr. E.D.N.C. 2006).

The plain-meaning approach was found "to be the most persuasive on the question of how to calculate 'projected disposable income'" by the court in the Southern District of Illinois. In re Nance, ___ B.R. ___, 2007 WL 2028579, at *4 (Bankr. S.D. Ill. July 10, 2007). The Illinois bankruptcy court explained:

> This Court, like Alexander, finds the placement of the definition of "disposable income" in § 1325(b)(2) indicative of Congress' intent that "current monthly income" be used in calculating "projected disposable income" in § 1325(b)(1)(B). This conclusion is further buttressed by the fact that Congress made no attempt to define "projected disposable income" anywhere in the statute, much less within the same subsection. Had Congress intended for "projected disposable income" to mean something different than "disposable income," it certainly could have provided a separate definition of the term.
>          . . . .

7

Furthermore, this Court's interpretation does not render the word "projected" meaningless. Rather the Court finds that "projected" merely explains the treatment of "disposable income." The definition of "projected" is "to plan, figure, or estimate for the future expenditures for the coming year." Webster's Collegiate Dictionary 932 (10th ed. 1996). Thus, under § 1325(b)(1)(B), a debtor's disposable income is calculated, according to the statutory definition, and then projected or extrapolated over the plan's term of years.

2007 WL 2028579, at *4-5. See also In re Austin, ___ B.R. ___, 2007 WL 2264062 (Bankr. D. Vt. Aug. 7, 2007) (§ 1325(b)(2), by incorporating current monthly income, relies upon income data from the pre-petition period. "The statute makes no reference to any other income and since 'current monthly income' is a defined term, the Court finds no support for using income from the date of filing or any other time period to compute 'disposable income.'"); In re Puetz, 370 B.R. 386 (Bankr. D. Kan. 2007) (Schedules I and J no longer determine plan payments for above-median income debtors; they do not conclusively establish net monthly income even though they may constitute the debtor's best estimates of future income and expenses); In re Berger, 2007 WL 1704403 (Bankr. M.D. Ga. June 11, 2007) (debtors are not obligated to pay more than the disposable income calculated on Form 22C).

The Berger case refers to the analogous confirmation requirements for a Chapter 11 individual case and the cross-reference in the statutory language to § 1325(b) when discussing "projected disposable income." BAPCPA added § 1129(a)(15) to Title 11. That section states:

> (a) The court shall confirm a plan only if all the following requirements are met:
> . . . .
> (15) In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan –

8

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

The Berger court found persuasive Congress's express link of the definition of "projected disposable income" in § 1129(a)(15) to "disposable income" as it is defined in § 1325(b)(2). See also In re Kolb, 366 B.R. 802, 816 n.18 (Bankr. S.D. Ohio 2007) (without deciding what weight, if any, § 1129(a)(15) should be given in the context of Chapter 13, the court observed, "§ 1129(a)(15)(B) certainly suggests that 'disposable income' in § 1325(b)(2) and 'projected disposable income' in § 1325(b)(1)(B) were regarded by Congress as the same concept.").

Recognizing the symmetry between the confirmation standards for a Chapter 13 plan and an individual Chapter 11 plan, one commentator has considered the Chapter 13 terms "projected disposable income" and "applicable commitment period" in light of the similar Chapter 11 language at § 1129(a)(15) and concluded that "projected disposable income" is simply annualized disposable income, calculated on Form 22C, and "applicable commitment period," rather than referring to the actual length of a plan, signifies the number of years by which to multiply the annualized disposable income to come to a total sum that the debtor must pay unsecured creditors under the plan. Hon. Randolph J. Haines, Chapter 11 May Resolve Some Chapter 13 Issues, 8 Norton Bankr. L. Adviser 1 (Aug. 2007). Under his analysis, a plan therefore need not extend for any particular duration; it need only provide for the payment to unsecured creditors of the dollar amount as calculated above.

The comparative analysis by Judge Haines is consistent with the bankruptcy judge's analysis in this case and consistent with those cited cases using the "plain meaning approach" to statutory interpretation.

Contrary to the position taken by the Trustee, we find that the definition of "applicable commitment period" in § 1325(b)(4) as five years for an above- median debtor does not refer to a minimum plan duration. It refers, instead, to the time during which the debtor must pay projected disposable income to the Trustee for payment to unsecured creditors. Another statutory provision, § 1322(d), discusses the length of the plan related to above-median income debtors. Section 1322(d) would be superfluous if § 1325(b)(4) set the length of the plan.

After reviewing the statutory language of § 1325(b) and comparing it to § 1322(d) and § 1129(a)(15), we agree that the "plain meaning" approach, as in the cases cited above and the commentary of Judge Haines in the Norton newsletter, is the appropriate method to use when interpreting these statutory provisions. Post-BAPCPA, 11 U.S.C. § 1325(b) is a new creature. While it contains language held over from the old statute, Congress has given it new parameters, with the intention of producing results dramatically different from pre-BAPCPA outcomes. "Projected disposable income" is the disposable income calculated on Form 22C extrapolated over the applicable commitment period. It is the amount to be paid on unsecured claims. The statute requires no more. If the disposable income is negative, there is no applicable commitment period and a debtor is not required to propose a plan that calculates payments to unsecured creditors in the same manner as plan payments to all creditors were calculated pre-BAPCPA.

The applicable commitment period is that period of time an above-median debtor must pay disposable income to the Trustee for payment to the unsecured creditors. If there is no disposable income, there is no applicable commitment period, and a debtor may obtain confirmation of a plan that is shorter than five years.

## III. Conclusion

The order confirming the 48 month Chapter 13 plan is AFFIRMED.

FEDERMAN, Bankruptcy Judge, dissenting

The bankruptcy court discussed and attempted to reconcile two parts of § 1325(b)(2). The first defines disposable income, and provides that all projected disposable income to be received "in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." The second provides that the applicable commitment period, which is 5 years here, may only be reduced "if the plan provides for payment in full of all unsecured claims over a shorter period." The bankruptcy court concluded that the Debtor's projected disposable income over the 5 year period is less than zero, and that the Debtor therefore, in effect, owes nothing to his unsecured creditors under his plan. The plan proposed by the Debtor, and confirmed by the bankruptcy court, requires the Trustee to use payments made by the Debtor to first take care of those obligations which would continue to affect the Debtor after the bankruptcy case is over. Thus, payments to the Trustee are to be used to bring current a nondischargeable student loan, to pay off the loan on a car Debtor wants to keep, and to pay off nondischargeable tax debt. Once the Debtor takes care of the bills that would otherwise have remained enforceable after the Chapter 13 discharge was entered, the bankruptcy court reasons, he is free to wipe the slate clean on his unsecured debts, even though they have not been paid 100%, and even though he has not made payments for the applicable payment period of 5 years.[2] The provision

---

[2] I note that the plan does provide for payment of some of the Debtor's unsecured debt. However, it does not provide for payment of all of it. Under the bankruptcy court's analysis, debtors such as this one would be free to propose a plan
(continued...)

11

requiring the Debtor to make payments for an applicable commitment period is, under this interpretation, deemed not to be applicable. Since I conclude that this holding ignores the manner in which the Bankruptcy Code requires payments to be made in Chapter 13 cases, the intent of Congress in amending § 1325(b) and, most importantly, the language of that provision, I respectfully dissent.

The Debtor here proposes a monthly payment of $600 to the Trustee, to be distributed pursuant to the provisions of the confirmed plan. The majority opinion analyzes the split in the bankruptcy courts on the question of whether a debtor's projected disposable income is simply based on a mathematical calculation taken from documents filed at the outset of a case, or is subject to some adjustment within the discretion of the bankruptcy court. While an important question, it is not determinative here, since the Trustee does not contend that the Debtor's proposed payment is less than his disposable income. The issue, instead, is how many months the Debtor needs to propose that he make such payment to the Trustee.

In a typical pre-BAPCPA case, little or none of a debtor's monthly payment to the trustee would end up being paid out to unsecured creditors. That is because the Bankruptcy Code gives first call on that payment to secured creditors, and to creditors whose claims are given priority status. In figuring out what his monthly payment needs to be under a plan, a debtor therefore would begin with the monthly payments needed to be made to those secured and priority creditors. Many of those payments would extend throughout the life of the plan. But others, either because of legal requirements or the debtor's own wishes, might be paid off sooner. For example, if another person has co-signed a debtor's obligation, the debtor is allowed to direct the

---

[2](...continued)
under which the unsecured debt would be paid nothing at all.

trustee to make payments to that creditor so as to get the co-signer off the hook.[3] If the debtor proposes that that creditor be paid off prior to the conclusion of the case, then the portion of the monthly payment which had been going to that creditor thereafter becomes available to unsecured creditors without priority. Or, in a more common example, the Bankruptcy Code provides for payment in full of priority claims such as attorneys' fees,[4] but does not provide that those payments be spread out over the entire length of the plan. Thus, many courts allow the debtor's attorney's fees to be paid on a monthly basis out of plan payments, over a shorter period than the plan length. Again, once those payments are completed, there should be additional funds available to drop down to unsecured creditors from each monthly payment. Other examples of periodic payments by a trustee which might be made at the beginning, but not throughout a case, include arrearages on long-term debts (which must be cured "within a reasonable time"),[5] arrearages on leases and executory contracts (which must be cured "promptly"),[6] and repayment of loans from certain pension and profit-sharing plans.[7] Before BAPCPA, once a debtor with no projected disposable income had paid or brought current his secured and priority debts, and stayed in the case for 36 months, he was entitled to a discharge even if nothing had been paid to unsecured creditors.

BAPCPA was intended by Congress to require that higher income debtors either pay 100% of unsecured claims, or make payments for a period of 5 years. While there is scant legislative history for most of the BAPCPA provisions, the House

---

[3] 11 U.S.C. § 1322(b)(1).

[4] 11 U.S.C. § 1322(a)(2).

[5] 11 U.S.C. § 1322(b)(5).

[6] 11 U.S.C. §§ 1322(b)(7) and 365(b)(1)(A).

[7] 11 U.S.C. § 1322(f).

Report on § 1325(b) makes clear that the applicable commitment period is a durational requirement for the Chapter 13 plan, and not just, as the majority holds, a multiplier:

> Sec. 318. Chapter 13 Plans to Have a 5-Year **Duration** in Certain Cases.
>
> Paragraph (1) of section 318 of the Act amends Bankruptcy Code sections 1322(d) and 1325(b) to specify that a chapter 13 plan may not provide payments over a **period** that is not less than five years if the current monthly income of the debtor and the debtor's spouse combined exceeds certain monetary thresholds. If the current monthly income of the debtor and the debtor's spouse fall below those thresholds, then the **duration of the plan** may not be longer than three years, unless the court, for cause approves a longer period of up to five years. The applicable commitment period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter **period** . . . .[8]

The majority concludes, however, that even though the Debtor proposes not to pay his unsecured claims in full, he is free to obtain a discharge of such debts after just 48 months of payments. In so ruling, the majority ignores the portion of the statute which provides that the applicable commitment period may only be reduced "if the plan provides for payment in full of all allowed unsecured claims over a shorter period."[9]

In addition, prior to BAPCPA, § 1325(b)(1)(B) provided that a debtor's projected disposable income to be received in the three-year period must be applied "to make payments under the plan." Thus, that projected disposable income could be used, as was commonly done, to make payments to priority and secured creditors, leaving nothing for the unsecured creditors at the end of the 36-month plan. Now,

---

[8] H.R. Rep. 109-31(1), p. 79, 109th Cong. 1st Sess. 2005(emphasis added).

[9] 11 U.S.C. 1325(b)(4)(B).

14

however, the statute provides that "all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments **to unsecured creditors** under the plan."[10]  In thus amending § 1325(b), Congress intended to make more funds available to unsecured creditors.  Yet the bankruptcy court's interpretation would allow this Debtor and others to stop making payments as soon as the obligations they would like to see paid have been satisfied, even though they have not made payments for the applicable commitment period required by that section.

The Trustee argues that the projected disposable income requirement sets a minimum amount which a debtor must propose to pay to unsecured creditors, but that a debtor is not free to walk away from those obligations as soon as that minimum has been reached.  Such an interpretation is consistent with the structure of Chapter 13. Even before BAPCPA was enacted, a debtor was required to propose payments to unsecured creditors at least equal to what those creditors would have received from the debtor's assets in a Chapter 7 liquidation.[11]  But proposing to pay that amount has never meant that a debtor has fulfilled all his obligations to those unsecured creditors. Instead, it is simply one of the requirements that must be met in order to confirm a plan.  I agree with the Trustee that the projected disposable income test, as revised by BAPCPA, was intended to impose another minimum requirement for confirmation. However, in addition to that minimum, Congress was careful to require that additional protections be given to unsecured creditors.  One such protection is that debtors are required to stay in the case and make payments for the applicable commitment period so that, once payments are used by the trustee to satisfy priority and secured claims, payments for the rest of the five years can be paid by the trustee to unsecured creditors.  In other words, if a debtor, such as this one, needs to pay, and is able to pay, $600 to secured and priority creditors at the beginning of the case, for whatever

---

[10]  11 U.S.C. § 1325(b)(1)(B).

[11]  11 U.S.C. § 1325(a)(4).

15

reason, he should be obligated to propose that payments in that amount continue throughout the applicable commitment period, unless he proposes to pay 100% of his unsecured claims in a shorter period. Since the bankruptcy court's interpretation allows debtors to ignore both the language of the statute, and its purpose as demonstrated by the legislative history, I would reverse.

———————