In re Thomas L. COLCLASURE,
Teri L. Colclasure, Debtors.

No. 4:07–bk–12245M.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

March 12, 2008.

Robert S. Coleman, Jr., Attorney at Law, Little Rock, AR, for Creditor.

Doug Lickert, Attorney at Law, North Little Rock, AR, for Joint Debtor.

Mary Jane Pruniski, David D. Coop, North Little Rock, AR, for trustee.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

Thomas L. Colclasure and Teri L. Colclasure (Debtors) filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on April 30, 2007. The Debtors proposed a plan of reorganization and the Chapter 13 Trustee filed an objection to confirmation.

A hearing on the Trustee's objection was held in Little Rock, Arkansas on September 28, 2007, and at the conclusion of the hearing the matter was taken under advisement. The Chapter 13 Trustee and the Debtors filed briefs in support of their respective arguments and the United States Trustee filed a brief supporting the Debtor's position with permission of the Court and without objection.

The matter before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) and the Court has jurisdiction to enter a final judgment in this matter.

## FACTS

The facts in this case are not in dispute. At the time the bankruptcy petition was filed, the Debtors were required to list their income and expenses on two sets of forms. The first set of forms contains Schedules I and J, which have been in use since the bankruptcy code was adopted. These forms indicate total actual monthly income of $5,373.10 and total actual monthly expenses of $4,134.00, leaving a monthly net income of $1,239.10 available to fund the plan. (Trustee's Ex. 1.) The second form, Official Form 22C (Form 22C), required by the enactment of BAPCPA[1] reflects the Debtors' "current monthly income" to be $5,571.57 ($66,858.84 annual income) which after subtracting the allowable deductions indicates monthly disposable income of $487.81. (Trustee's Ex. 2.)

Prior to confirmation of the original plan, one of the Debtor's (Mrs. Colclasure) health deteriorated, and as a result she could no longer perform her work duties and was required to terminate her employment. Her illness resulted in the loss of monthly income, which averaged $2,256.71. The Debtors' joint income was reduced further by the loss of some rental income. As a result of the changed circumstances, the Debtors have filed a pre-confirmation amended plan which proposes to pay the sum of $450.00 a month into the plan for 60 months.[2] (Trustee's Ex. 6.) The pro-

---

1. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

2. Although not essential to this discussion, the Debtor's first plan proposed to pay $1,240.00 per month into the plan which was enough to

posed plan of $450.00 per month for 60 months includes payment to creditors other than unsecured creditors. These payments consist of $2,450.00 in attorney's fees, a Trustee's commission, and $291.25 per month to a secured creditor, Drive Financial. (Trustee's Ex. 3 and 5.) The Chapter 13 Trustee calculates that unsecured creditors will receive $8,781.06 over the life of the plan whereas the amount calculated on Form 22C would pay $487.81 × 60 or $29,268.60, which is enough to pay unsecured claims of $28,283.00 in full. (Trustee's Ex. 7.) The amount of the plan payments in the new plan is computed based on current income.

## ARGUMENT

The Chapter 13 Trustee argues that notwithstanding the changed circumstances, the Debtors must calculate their monthly disposable income using Form 22C rather than Schedules I and J because the plan does not propose to pay unsecured creditors 100 percent.

The Debtors and the United States Trustee argue that because of changed circumstances, the Debtors are permitted to calculate monthly disposable income by referring to their current circumstances and not Form 22C because the new numbers accurately reflect the projected disposable income to be received over the 60–month life of the plan.

## DISCUSSION

■■■ In order for a Chapter 13 plan to be confirmed, the plan must comply with the provisions of 11 U.S.C. § 1325(a). 11 U.S.C. § 1325(a) requires, in general, that unsecured creditors receive at least what they would receive in a Chapter 7 liquidation case, that the plan is filed in good faith, and that the plan is feasible. The

pay unsecured creditors 100 percent. (Trustee's Ex. 3.)

plan must also comply with other applicable provisions of Title 11 and Chapter 13 and all required fees must be paid. See 8 Collier on Bankruptcy ¶ 1325.02–.03 (Alan N. Resnick & Henry J. Summer et al eds., 15th ed. rev.2006).

However, if the Trustee or a holder of an unsecured claim objects to confirmation then the requirements of 11 U.S.C. § 1325(b) becomes applicable.

11 U.S.C. § 1325(b) sets out the following requirements:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

(2) For purposes of this subsection, the term 'disposable income' means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably to be expended for such child) less amounts, reasonably necessary to be expended—

(A)(I) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obli-

gation, that first becomes payable after the date the petition is filed; and

. . .

(3) Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph(2), shall be determined in accordance with subparagraphs (A)and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than-

. . .

(B) in the case of a debtor in a household of 2, 3 or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals;

Under the BAPCPA amendments, to calculate the plan payments in a Chapter 13 case, the Debtors must compute their current monthly income. The Bankruptcy Code defines current monthly income as:

the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) . . . derived during the 6–month period ending on . . . the last day of the calendar month immediately preceding the date of the commencement of the case . . . but excludes benefits received under the Social Security Act.

11 U.S.C. § 101(10A) (2006).

If the debtor's average monthly income derived during the specified six-month period preceding bankruptcy exceeds the median income for the state in which the debtor resides, the debtor must use Form 22C (the means test) to compute the amount of monthly disposable income to be paid into the plan for the benefit of unsecured creditors. 11 U.S.C. § 1325(b)(2)(A)-(C)(2006); Fed. R. Bankr.P. 1007(b)(6). Pursuant to Form 22C, the Debtor may deduct from current monthly income certain living expenses, some of which are actual expenses and some of which are average or hypothetical figures. The form also permits the deductions for payments on secured claims and priority unsecured claims. After all deductions have been subtracted from current monthly income, the resulting number is designated by Form 22C as "monthly disposable income." *In re Lanning*, 380 B.R. 17, 21 (10th Cir. BAP 2007).

## ANALYSIS

The focus of the argument between the respective positions concerns the phrase "projected disposable income" found in 11 U.S.C. § 1325(b)(1)(B). This section requires above-median debtors to pay "all of the debtor's projected disposable income . . . to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). This concept works well enough when there is no appreciable change in the debtor's income average for the previous six months and the income calculated using Form 22C is anticipated to be available on the day of the confirmation hearing. But when, as in this case, the debtor's current income is much less than the previous six-month's average, confirmation of a plan based on the debtor's average of the previous six months is impossible because the Debtors have insufficient income to make the payments. *In re Lanning*, 380 B.R. 17, 21 (10th Cir. BAP 2007). The issue can appear in reverse if the facts are that the debtor's average income of the previous six months is substantially less than the current income; the calculation results in a substantial underpayment to unsecured creditors. See *In re Pak*, 378 B.R. 257 (9th Cir. BAP 2007) and *In re Kibbe*, 361 B.R. 302 (1st Cir. BAP 2007).

As Judge Barry of this Court pointed out in his recent opinion:

The Bankruptcy Appellate Panel of the Eighth Circuit has recognized at least three interpretations of the meaning of "projected disposable income" have developed in the context of Section 1325(b) and the means test. *Coop v. Frederickson (In re Frederickson)*, 375 B.R. 829, 833 (8th Cir. BAP 2007). First, some courts continue to calculate projected disposable income from the debtor's schedules I and J. *Id.* (citing *In re Hardacre*, 338 B.R. 718 (Bankr.N.D.Tex. 2006) as an example of this approach). The *Hardacre* court believed that the term "projected disposable income" must be based upon "the debtor's anticipated income during the term of the plan, not merely an average of her prepetition income." *Hardacre*, 338 B.R. at 722.

Second, some courts calculate projected disposable income from either From B22C or the debtor's schedules I and J, whichever more accurately reflects the debtor's current ability to pay creditors. *Frederickson*, 375 B.R. at 833 (recognizing *In re Jass*, 340 B.R. 411 (Bankr. D.Utah 2006) as an example of this approach). The *Jass* court found that the significance of the word "projected" was that it "requires the Court to consider both future and historical finances of a debtor in determining compliance with § 1325(b)(1)(B)." *Jass*, 340 B.R. at 416. According to *Jass,* the court would presume the figure from Form B22C is the correct projected disposable income unless the debtor can show a substantial change in circumstances to rebut the figure. *Id.* at 418.

Finally, some courts follow a plain-meaning approach and only use Form B22C to determine projected disposable income. *Frederickson*, 375 B.R. at 833 (recognizing In *re Alexander*, 344 B.R. 742 (Bankr.E.D.N.C.2006) as an example of this approach). According to *Alexan-*

*der*, "in order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) and does the math." *Alexander*, 344 B.R. at 749.

*In re Miller*, 381 B.R. 736, 739–740 (Bankr.W.D.Ark.2008).

The United States Trustee articulates this argument in her brief as follows:

In the economic and financial context-which is plainly the relevant context for purposes of this statute-the calculation of "projected" financial data may well *begin* with historical data, but it does not necessarily (or even usually) end there, and it certainly does not entail a rigid and inviolable assumption that projected income will necessarily be identical to past income even when the available facts demonstrate otherwise. To the contrary, in context the term "projected" must be understood to refer to a forecast or estimate of an expected future financial reality. *See Random House Dict. of the English Lang.* 1546 (2d. ed.1987) (defining to "project" as, *inter alia,* "to set forth or calculate" (some future thing)); ... *Webster's Third New Int'l Dict.* 1813 (1993)(defining "projected" as, *inter alia,* "planned for future execution: contrived, proposed," as "[projected] outlays for new plant and equipment").

The cases are deadlocked on what "projected disposable income" actually means. The Eighth Circuit Bankruptcy Appellate Panel opinion of *In re Frederickson*, 375 B.R. 829 (8th Cir. BAP 2007) appears as Judge Barry observed to adopt the strict interpretation contained in the case of *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C.2006), which Judge Barry held was the appropriate interpretation. The most persuasive view is the analysis of the majority opinion in the case of *In re Fred-*

*erickson*, 375 B.R. 829 (8th Cir. BAP 2007), Judge Barry's opinion in the case of *In re Miller*, 381 B.R. 736 (Bankr. W.D.Ark.2008), and those cases and treatises which are cited in support thereof. See 6 Keith M. Lundin, Chapter 13 Bankruptcy § 467.1 (3d ed.2000).

 The Court's duty is to follow the language of the statute. Although the phrase "projected disposable income to be received" does refer to the future, projections do not necessarily or even usually consists of estimates based on anything other than historical data. Congress chose the phrase "projected disposable income" and it also statutorily defined the data [current monthly income] the courts must use in making the projection, that is, the debtor's previous six-month's average income. *In re Rotunda*, 349 B.R. 324, 331 (Bankr.N.D.N.Y.2006). The fact that, as in this case, this interpretation results in a head-scratching outcome is not grounds to deviate from the unambiguous language of the statute. *In re Alexander*, 344 B.R. 742, 747 (Bankr.E.D.N.C.2006). To do otherwise is to rewrite the statute to make it resemble the code before it was amended by BAPCPA. As a practical matter, Congress removed the discretion the Bankruptcy Court had when dealing with facts similar to those in this case and placed it in the hands of the Chapter 13 Trustee.

It is unclear what the Chapter 13 Trustee's goal is in this case. As stated in 8 Collier on Bankruptcy ¶ 1325.08[5][a]:

> If a debtor's income has decreased and is unlikely to change, a trustee should not file an objection under section 1325(b) based on the current monthly income figure if the debtor is paying all disposable income as defined by current

law. Trustees have no legitimate interest in objecting to plans where debtors are paying all that they can truly afford. Unsecured creditors also would rarely have an interest in forcing debtors into chapter 7, which would be the likely result of such an objection, especially if the debtor is below median income and therefore not subject to the means test. Thus, absent an objection, a reasonable plan based on the debtor's true income may be confirmed, because section 1325(b), by its own terms, comes into play only if an objection is filed.

However, because the Chapter 13 Trustee objected to confirmation of the plan, 11 U.S.C. § 1325(b) becomes applicable and the Court is obliged to follow the language of the statute as interpreted by the line of cases beginning with *In re Alexander*, 344 B.R. 742 (Bankr.E.D.N.C.2006) and *In re Frederickson*, 375 B.R. 829 (8th Cir. BAP 2007).[3] That view requires the above-median debtor to make payments to unsecured creditors in accordance with the calculations resulting from the use of Form 22C based on the definition of current monthly income contained in 11 U.S.C. § 101(10A)(2007).

Therefore, the Chapter 13 Trustee's objection to confirmation is sustained. The Debtors are granted twenty (20) days to file a modified plan, convert to Chapter 7, or file a motion to dismiss.

IT IS SO ORDERED.

---

**3.** As pointed out in Judge Federman's dissent, the decision in *Frederickson* on the issue is probably dicta but the Court finds the reasoning persuasive.