OPINION**
SILER, Circuit Judge:
Edward Maney, as Chapter 13 Trustee, appeals the bankruptcy court’s order confirming the plan of the debtor, Laura Kagenveama. He argues that the bankruptcy court erred by (1) calculating Ka-genveama’s “projected disposable income” by multiplying her “disposable income” over the “applicable commitment period” and (2) finding the five-year “applicable commitment period” inapplicable because Kagenveama’s resulting “projected disposable income” was a negative number. We affirm.
I. Background
In 2005, Kagenveama filed a petition for Chapter 13 protection in the bankruptcy court. In her filing she included the required Schedules A through J, a Statement of Financial Affairs, a Master Mailing List, and a Form B22C Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income. Schedules I and J listed Kagenvea-ma’s projected monthly income and expenses. Her Schedule I listed a monthly gross income of $6,168.21, with a monthly net income of $4,096.26. Her Schedule J listed monthly expenses of $2,572.37. Subtracting total monthly expenses from total monthly net income left Kagenveama with $1,523.89 in monthly income available to pay creditors.
Kagenveama filed an amended Form B22C listing an average monthly gross income of $6,168.21 for the six months prior to her bankruptcy petition, yielding an annual income of $74,018.52. Because she was an above-median income debtor, § 1325(b)(3) required her to recalculate her expenses pursuant to § 707(b)(2). This recalculation produced a revised Form B22C listing her “disposable income” as a negative number:-$4.04.
Kagenveama determined that her “projected disposable income” was a negative number because her “disposable income” was a negative number. Because her “projected disposable income” was a negative number, she would not be subject to the “applicable commitment period.” However, she voluntarily proposed a plan in which she would pay $1,000 per month with a commitment period of three years. This plan yielded an estimated dividend of $9,444.38 to her unsecured creditors. The Trustee objected because the plan extended only three years, not the five-year “applicable commitment period” under § 1325(b)(4)(A)(ii). The bankruptcy court held that because Kagenveama had no *994 “projected disposable income,” she was not required to propose a plan with an “applicable commitment period” of five years. The Trustee appealed, and the bankruptcy court entered an order certifying this case for direct appeal to this court.
II. Analysis
The parties dispute the meaning of two phrases contained in § 1325 of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (“BAPC-PA”), Pub.L. No. 109-8, 119 Stat. 23: “projected disposable income” and “applicable commitment period.” This case raises solely questions of law, which we review de novo. In re Alsberg, 68 F.3d 312, 314 (9th Cir.1995).
A. “Projected Disposable Income”
The parties dispute whether “projected disposable income” means “disposable income,” as defined by § 1325(b)(2), projected over the “applicable commitment period,” as Kagenveama contends, or whether that phrase connotes a forward-looking concept that only uses the “disposable income” calculation as a starting point, as the Trustee contends. Based on the plain meaning of the statute, we hold that the debtor’s interpretation is correct.
The starting point for resolving a dispute over the meaning of a statute begins with the language of the statute itself. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Where statutory language is plain, “the sole function of the courts — at least where the disposition required by the text is not absurd-is to enforce it according to its terms.” Lamie v. United States Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004).
Here, each party claims that the plain text of the statute supports its respective interpretation of projected disposable income. Kagenveama argues that the term “disposable income,” as used in § 1325(b)(1)(B), is specifically defined in § 1325(b)(2). She asserts that the word “projected” is a modifier of “disposable income” that requires multiplying “disposable income” out over the “applicable commitment period.” The Trustee argues that “disposable income” and “projected disposable income” are not directly linked concepts. Under the Trustee’s approach, “projected” necessarily implies a forward-looking concept of “disposable income,” which would allow a court to depart from the § 1325(b)(2) “disposable income” calculation and consider other evidence to derive “projected disposable income.”
We begin our analysis with the statute. If a trustee or holder of an allowed unsecured claim objects to the confirmation of a plan that does not propose to pay unsecured claims in full, the court may confirm the plan only if the plan provides that all of the debtor’s “projected disposable income” received during the “applicable commitment period” is applied to make payments under the plan. 11 U.S.C. § 1325(b)(1). “Projected disposable income” is not a defined term in the Bankruptcy Code. However, “disposable income” is defined in § 1325(b)(2).[1] Reading *995 the statute as requiring “disposable income,” as defined in subsection (b)(2), to be projected out over the “applicable commitment period” to derive the “projected disposable income” amount is the most natural reading of the statute, and it is the one we adopt.
Courts must give meaning to every clause and word of a statute. Negonsott v. Samuels, 507 U.S. 99, 106, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993). Section 1325 uses the term “disposable income” in only two places— § 1325(b)(1)(B) (“projected disposable income”) and § 1325(b)(2) (defining “disposable income”). The substitution of any data not covered by the § 1325(b)(2) definition in the “projected disposable income” calculation would render as surplusage the definition of “disposable income” found in § 1325(b)(2). There can be no reason for § 1325(b)(2) to exist other than to define the term “disposable income” as used in § 1325(b)(1)(B). “If ‘disposable income’ is not linked to ‘projected disposable income’ then it is just a floating definition with no apparent purpose.” In re Alexander, 344 B.R. 742, 749 (Bankr.E.D.N.C.2006). The plain meaning of the word “projected,” in and of itself, does not provide a basis for including other data in the calculation because “projected” is simply a modifier of the defined term “disposable income.” Therefore, to give meaning to every word of § 1325(b), “disposable income,” as defined in § 1325(b)(2), must be “projected” in order to derive “projected disposable income.”
Furthermore, “projected disposable income” has been linked to the “disposable income” calculation before BAPCPA. Any change in how “projected disposable income” is calculated only reflects the changes dictated by the new “disposable income” calculation; it does not change the relationship of “projected disposable income” to “disposable income.”[2] Pre-BAPCPA, “projected disposable income” was determined by taking the debtor’s “disposable income,” under § 1325(b)(2)(A) & (B), and projecting that amount over the “applicable commitment period.” In re Anderson, 21 F.3d 355, 357 (9th Cir.1994).
In Anderson, a pre-BAPCPA case, the trustee objected to the confirmation of the debtors’ Chapter 13 bankruptcy plan because the debtors proposed to pay only their “projected disposable income” as calculated at the time of the filing of their plan. 21 F.3d at 356. The trustee demanded that the debtors sign a certification that they would devote to the plan all of their actual “disposable income,” as de *996 termined by the trustee, as a prerequisite for plan confirmation. Id. at 356-57. The bankruptcy court denied plan confirmation because the debtors refused to sign the certification. Id. at 357. We reversed, holding that § 1325(b)(1)(B) requires payment of “projected disposable income” as calculated at the time of confirmation. Id. at 357-58. Anderson shows that, prior to the enactment of BAPCPA, courts determined the debtor’s “disposable income” and then “projected” that sum into the future for the required duration of the plan when considering whether to confirm the plan. Id. at 357.
The Trustee presents two lines of authority to support his argument that § 1325(b)(1)(B) requires a forward-looking determination of “projected disposable income.” The first line holds that the calculation of “ ‘projected disposable income’ must be based upon the debtor’s anticipated income during the term of the plan, not merely an average of [the debtor’s] prepet-ition income” as computed on Form B22C. In re Hardacre, 338 B.R. 718, 722 (Bankr.N.D.Tex.2006). This authority reasons that “projected disposable income” is not related to “disposable income”; therefore courts are free to arrive at a calculation of “projected disposable income” that ignores the § 1325(b)(2) definition of “disposable income.” Id. at 723.
We reject this position because the plain language of § 1325(b) links “disposable income” to “projected disposable income,” and we are bound by the definition of “disposable income” provided in § 1325(b)(2)(B). Even before the enactment of BAPCPA, we held that “projected” modified “disposable income,” thus foreclosing the argument that “projected disposable income” has no relationship to “disposable income.” Anderson, 21 F.3d at 357. In light of Anderson, we cannot read the word “projected” to be synonymous with the word “anticipated” in this context. See id. “Those courts that argue Congress intended something more when it referred to ‘projected disposable income’ in § 1325(b)(1)(B) fail to address the fact that Congress defined ‘disposable income’ subsequently in § 1325(b)(2).” In re Miller, 361 B.R. 224, 235 (Bankr.N.D.Ala.2007) (citing In re Rotunda, 349 B.R. 324, 331 (Bankr.N.D.N.Y.2006)). To get from the statutorily defined “disposable income” to “projected disposable income,” “one simply takes the calculation ... and does the math.” In re Alexander, 344 B.R. at 749.
The second line of cases that the Trustee urges us to follow holds that calculation of “disposable income” under § 1325(b)(2) is merely a starting point for deriving “projected disposable income.” In re Jass, 340 B.R. 411, 415 (Bankr.D.Utah 2006). Under this line of cases, the data from Form B22C creates a presumptively correct definition of or a rebut-table presumption of “disposable income.” Id. at 418. The presumptively correct calculation can be rebutted or supplemented by other evidence to arrive at “projected disposable income.” Id. Courts may consider both the future and historical finances of the debtor to make the calculation. Id. at 416.
This line of authority is unpersuasive because no text in the Bankruptcy Code creates a presumptively correct definition of “disposable income” subject to modification based on anticipated changes in income or expenses. In fact, the textual changes enacted by BAPCPA compel the opposite conclusion. The revised “disposable income” test uses a formula to determine what expenses are reasonably necessary. See 11 U.S.C. § 1325(b)(2)-(3). This approach represents a deliberate departure from the old “disposable income” calculation, which was bound up with the *997 facts and circumstances of the debtor’s financial affairs. In re Winokur, 364 B.R. 204, 206 (Bankr.E.D.Va.2007); In re Farrar-Johnson, 353 B.R. 224, 231 (Bankr.N.D.Ill.2006) (stating that “[e]liminating flexibility was the point: the obligations of [C]hapter 13 debtors would be subject to clear, defined standards, no longer left to the whim of a judicial proceeding”) (internal quotations omitted).
Moreover, BAPCPA’s changes to the Bankruptcy Code made it clear that Congress knows how to create a presumption. See 11 U.S.C. § 707(b)(2) (stating when the court shall presume abuse exists). Congress could have included a presumption in § 1325(b)(l)-(2), but it did not. When Congress includes language in one part of a statute and excludes it from another part of the same statute, it is presumed that Congress acted purposely in the disparate inclusion or exclusion. Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 439-40, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (citing Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)); Camacho v. Bridgeport Fin. Inc., 430 F.3d 1078, 1081 (9th Cir.2005). We decline to follow the line of cases holding that Form B22C creates a presumptively correct definition of “disposable income.”
 Finally, the disposition required by the plain text of § 1325(b) is not absurd. Section 1325(b)’s new approach to calculating “disposable income” for above-median debtors produces a less favorable result for unsecured creditors when “disposable income” is plugged into the “projected disposable income” calculation. We “will not override the definition and process for calculating disposable income under § 1325(b)(2)-(3) as being absurd simply because it leads to results that are not aligned with the old law.” In re Alexander, 344 B.R. at 747. Furthermore, we will not de-couple “disposable income” from the “projected disposable income” calculation simply to arrive at a more favorable result for unsecured creditors, especially when the plain text and precedent dictate the linkage of the two terms. See Anderson, 21 F.3d at 358 (stating that “ § 1325(b)(1)(B) requires provision for ‘payment of all projected disposable income’ as calculated at the time of confirmation, and we reject the Trustee’s attempt to impose a different, more burdensome requirement on the debtors’ plan as a prerequisite to confirmation”). If the changes imposed by BAPCPA arose from poor policy choices that produced undesirable results, it is up to Congress, not the courts, to amend the statute. See Lamie, 540 U.S. at 542, 124 S.Ct. 1023.
Furthermore, Chapter 13 trustees were aware of the change in the law and notified Congress of their concerns before BAPC-PA was passed, but Congress failed to act. In re Alexander, 344 B.R. at 747-48; Marianne B. Culhane & Michaela M. White, Catching Can-Pay Debtors: Is the Means Test the Only Way, 13 Am. Bankr.Inst. L.Rev. 665, 682 (2005). Absent any revision by Congress, we presume that it was aware of the new result, and the decision not to amend the statute was intentional. Lamie, 540 U.S. at 541, 124 S.Ct. 1023. While the new law may produce less favorable results for unsecured creditors when applied to above-median income Chapter 13 debtors, it is far from absurd to hold that debtors with no “disposable income” have no “projected disposable income.” See In re Alexander, 344 B.R. at 750. Furthermore, if the debtor’s income increases after the plan is confirmed, the trustee may seek plan modification under § 1329.
B. “Applicable Commitment Period”
The Trustee argues that “applicable commitment period” mandates a *998 temporal measurement, i.e., it denotes the time by which a debtor is obligated to pay unsecured creditors, while Kagenveama argues that it mandates a monetary multiplier, i.e., it is merely useful in calculating the total amount to be repaid by a debtor. Based on the plain language of the statute, we conclude that the Trustee’s interpretation is correct, but that the “applicable commitment period” requirement is inapplicable to a plan submitted voluntarily by a debtor with no “projected disposable income.”
Prior to BAPCPA, the Bankruptcy Code provided for a three-year period. However, BAPCPA changed “three year” to “applicable commitment,” but left the word “period” unchanged. Based on widely accepted temporal connotation of “period,” the bankruptcy court noted that § 1329(c) “makes clear that ‘applicable commitment period’ has a temporal meaning....” However, the bankruptcy court went on to observe that in this case the “applicable commitment period” is irrelevant because it is applicable only to the payment of “projected disposable income,” and, in this case, there is no “projected disposable income.” The bankruptcy court also noted that the plain language of the Code compels the conclusion that the “applicable commitment period” is not the minimum plan duration, but instead “represents the period over which payments of projected disposable income must be devoted to unsecured creditors.”
If the trustee or the holder of an allowed unsecured claim objects to confirmation of the plan and the debtor is unable to provide for full payment of allowed unsecured claims, the debtor must propose a plan in which all “projected disposable income” is submitted to make payments for the “applicable commitment period” in order for the plan to be confirmed. 11 U.S.C. § 1325(b)(1). The plain meaning of the word “period” indicates a period of time. In re Alexander, 344 B.R. at 750 (citing Webster’s New World Dictionary 1004 (3d College ed.1994)). However, “applicable commitment period” is exclusively linked to § 1325(b)(1)(B) and the “projected disposable income” calculation. In re Alexander, 344 B.R. at 751. Thus, only “projected disposable income” is subject to the “applicable commitment period” requirement. Id. Any money other than “projected disposable income” that the debtor proposes to pay does not have to be paid out over the “applicable commitment period.” Id.
There is no language in the Bankruptcy Code that requires all plans to be held open for the “applicable commitment period.” Section 1325(b)(4) does not contain a freestanding plan length requirement; rather, its exclusive purpose is to define “applicable commitment period” for purposes of the § 1325(b)(1)(B) calculation. Subsection (b)(4) states “For purposes of this subsection, the ‘applicable commitment period’ ... shall be ... not less than 5 years” for above-median debtors. Subsection (b)(1)(B) states that “the debtor’s ‘projected disposable income’ to be received in the ‘applicable commitment period’ ... will be applied to make payments under the plan.” When read together, only “projected disposable income” has to be paid out over the “applicable commitment period.” When there is no “projected disposable income,” there is no “applicable commitment period.”
Subsections (b)(2) (“disposable income”) and (b)(3) (“amounts reasonably necessary to be expended”) exist only to define terms relevant to the subsection (b)(1)(B) calculation. Subsection (b)(4), which defines “applicable commitment period,” is no different. Aside from the definitional subsection (b)(4), the term “applicable commitment period” is used only once in *999 § 1325: the court may approve the plan over objection if all of the debtor’s “projected disposable income” received during the “applicable commitment period” is applied to plan payments. Thus, the “applicable commitment period” applies only to plans that feature “projected disposable income.”[3] Here there is none.
A recent decision by the Eighth Circuit Bankruptcy Appellate Panel (“BAP”) supports limiting the application of the “applicable commitment period” to plans that have “projected disposable income.” In re Frederickson, 375 B.R. 829, 835 (2007). In Frederickson, the BAP held that “applicable commitment period” does not refer to a minimum plan duration, but rather it refers to the time in which the debtor must pay “projected disposable income” to the trustee. Id. Another statutory provision, § 1322(d), governs plan duration for above median income debtors. Id. The BAP concluded that “[§ ]1322(d) would be superfluous if § 1325(b)(4) set the length of the plan.” Id. We find this reasoning persuasive.
The Trustee suggests that we should require a five-year plan for confirmation under § 1325 to allow an extended period for unsecured creditors to seek modification under § 1329. If a debtor proposes a three-year plan, receives a discharge, and experiences an increase in income in year four, then the debtor receives a windfall at the expense of creditors. While this approach would promote the sound policy of requiring debtors to repay more of their debts, there is nothing in the Bankruptcy Code that requires a debtor with no “projected disposable income” to propose a five-year plan. We must enforce the plain language of the Bankruptcy Code as written. We may not make changes to the plain language of the Bankruptcy Code based on policy concerns because that is the job of Congress. Nothing in the Bankruptcy Code states that the “applicable commitment period” applies to all Chapter 13 plans.
We stress that nothing in our opinion prevents the debtor, the trustee, or the holder of an allowed unsecured claim to request modification of the plan after confirmation pursuant to § 1329. Here, we are dealing with the plan confirmation requirements of § 1325, not plan modification under § 1329. Another section of the Bankruptcy Code governs modification of the plan before confirmation. 11 U.S.C. § 1323. Because Congress directly addressed the modification of plans in other sections, we need not transform § 1325 into a plan modification tool.
Here, the “applicable commitment period” is irrelevant because it applies only to the payment of “projected disposable income,” and, in this case, there is no “projected disposable income.” Kagenveama’s voluntary payments come from money other than “projected disposable income”; therefore, there is no requirement that these payments occur for five years. Because her “projected disposable income” was zero or less and, therefore, the “applicable commitment period” did not apply, the bankruptcy court properly confirmed her plan. If her income changes in the *1000 future before completion of the plan, the Trustee or the holder of an unallowed secured claim may seek modification of the plan under § 1329.
III. Conclusion
For the foregoing reasons, we AFFIRM the order of the bankruptcy court.

 This disposition is published pursuant to Ninth Circuit Rule 36-2(g), at the request of the panel.

. Disposable income is defined as "current monthly income received by the debtor ... less amounts reasonably necessary to be expended. ...” 11 U.S.C. § 1325(b)(2). Current monthly income, as used here, is a new term under BAPCPA defined as “the average monthly income from all sources that the debtor receives” during the 6-month period preceding the commencement of the case or a date upon which the current income is determined by the court. 11 U.S.C. § 101(10A)(A). Rule 1007(b)(6) of the Federal Rules of Bankruptcy Procedure requires a debtor to file a statement of current monthly income on *995 Form B22C. Section 1325(b)(3) requires that if a debtor's annualized current monthly income is greater than the median family income of similarly-sized households, then “amounts reasonably necessary to be expended” are determined in accordance with § 707(b)(2).

. BAPCPA significantly changed the definition of “disposable income.” Before BAPC-PA, “disposable income” was defined as income "received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debt- or....” 11 U.S.C. § 1325(b)(2) (2000), amended by Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, § 102(h)(2), 119 Stat. 23. Determining what was "reasonably necessary” for the maintenance or support of the debtor was dependent on each debtor’s individual facts and circumstances. This amorphous standard produced determinations of a debtor’s “disposable income” that varied widely among debtors in similar circumstances. BAPCPA replaced the old definition of what was "reasonably necessary” with a formulaic approach for above-median debtors. 11 U.S.C. § 1325(b)(3). This formula significantly changed the way in which “disposable income” is calculated. However, as demonstrated in Anderson, “disposable income” has always been linked to “projected disposable income.”

. The only other mention of the "applicable commitment period” in Chapter 13 lends support to this position. Section 1329 references the "applicable commitment period under section 1325(b)(1)(B)” when discussing plan modification requirements. This reference shows that the “applicable commitment period” only has meaning when applied to the § 1325(b)(1)(B) calculation. While reading subsection (b)(4) in isolation may lend support to the Trustee's position, reading it in conjunction with subsection (b)(1)(B) shows that subsection (b)(4) governs the length of the plan only where there is "projected disposable income.”